UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES QUATRINE,

        Plaintiff,

Case No. 1:12-cv-180

Hon. Robert J. Jonker

vs.

ANTHONY HENRY, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner incarcerated by the Michigan Department of Corrections ("MDOC") pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Person Act of 2000, codified at 42 U.S.C. § 2000cc–1 ("RLUIPA"). This matter is now before the court on defendants' motion for summary judgment (docket no. 14).

**I.    Background**

Plaintiff filed a complaint alleging that defendants Anthony Henry, Food Service Director at Brooks Correctional Facility (LRF) and Lyle Daniels, Assistant Food Service Director at LRF: violated his rights under the First Amendment and RLUIPA by acting with deliberate indifference denying his religious-based diet for 170 days; retaliated against him; and deprived him of a Buddhist diet by transferring him to Gus Harrison Correctional Facility (ARF), a facility which could not accommodate his religious diet. *See* Compl. at ¶ IV (docket no. 1). Specifically, plaintiff alleged that defendants retaliated against him "by denying his religious based diet for 170 days" after plaintiff pointed out "errors in the way that the Defendants <u>continue</u> to prepare the 'Strict Vegan Diet' trays." *Id.* (emphasis in original).

Plaintiff set forth the following allegations.[1] He has been affiliated with "S[i]ddha Yoga and Buddhist Philosophy" since 2007 and attended Buddhist Religious Services regularly since 2010. *See* Unsworn Aff. at ¶ 1 (docket no. 1-1). In the Fall of 2010, plaintiff privately "began a 'Vegan' diet regimen[]", and soon thereafter applied for the Buddhist Diet at LRF. *Id.* at ¶ 2. Plaintiff began receiving a Buddhist Diet on March 26, 2011. *Id.* at ¶ 3. Later plaintiff learned that the Buddhist Diet included items in violation of Buddhist beliefs (e.g., egg noodles, ranch style salad dressing, bread and dairy items). *Id.* at ¶ 4. Plaintiff complained about this discrepancy to defendants Henry and Daniels, but they denied that the food violated the religious diet. *Id.* at ¶ 5.

On or about June 27, 2011, plaintiff was transferred to a different facility (ARF). *Id.* at ¶ 6. Plaintiff claims that the transfer was made "with no regard" to his Buddhist beliefs or diet, noting that ARF had no accommodation for Buddhist dietary needs. *Id.* at ¶¶ 6-7. Plaintiff was transferred back to LRF on or about July 1, 2011. *Id.* Upon his return to LRF, plaintiff continued to complain about the improper food items on the Buddhist diet tray. *Id.* at ¶ 8.

On or about July 27, 2011, defendant Daniels informed plaintiff that he was being removed from the Buddhist diet because of a previous prisoner store order that contained "Ramen Soup" and artificially flavored popcorn which, according to LRF staff, was in violation of the Buddhist diet restrictions. *Id.* at ¶ 9. Plaintiff claims that he purchased these items for another inmate and admitted that he violated "a separate rule by bartering the items to another prisoner." *Id.* at ¶¶ 11-13.

Plaintiff claims that his removal from the Buddhist diet was done out of retaliation

---

[1] Plaintiff's complaint included a signed, but unsworn, affidavit setting forth facts in support of his claim. *See* Unsworn Aff. (docket no. 1-1). The court will construe these statements as additional allegations in support of plaintiff's claim.

due to his repeated complaints about the Buddhist diet meals served at LRF. *Id.* at ¶ 10. In addition, plaintiff claims that his "hasty transfer" to ARF and then back to LRF was also in retaliation for his complaints regarding the Buddhist diet meals. *Id.* at ¶ 19.

Plaintiff also claims that he had to wait 60 days to re-apply for the Buddhist diet detail and that on September 24, 2011, plaintiff was told that he "must now re-test and re-take the exact same 'BUDDHIST DIET TEST' that [he] had taken in Feb. 2011." *Id.* at ¶ 15. Plaintiff claims that the requirement that he re-take the religious diet test is not MDOC policy. *Id.* at ¶ 16. Rather, the policy only requires that he wait 60 says for reinstatement. *Id.* at ¶ 16. Plaintiff was reinstated to the Buddhist diet on January 13, 2012. *Id.* at ¶ 17. Plaintiff alleged that he survived "on vegetables, oatmeal and peanut-butter" during the approximately 170 days he was removed from the Buddhist diet. *Id.*

Plaintiff seeks an injunction ordering defendants to stop serving meals which violate the strict Vegan diets for Buddhists; an injunction ordering defendants to label prisoner store list items for "Vegan allowable foods" as they do for the Kosher and Halal diets; and punitive damages against defendants in the amount of $20,000.00. Compl. at ¶ V.

**II.     Defendants' motion for summary judgment**

**A.     Legal Standard**

Defendants have moved for summary judgment because plaintiff failed to exhaust administrative remedies. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Failure to exhaust

#### 1. Exhaustion requirement

The PLRA, 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S.

4

at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grieveable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not

receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Plaintiff's grievances

Defendants have produced evidence that plaintiff exhausted two grievances while at LRF: Grievance LRF 11-05-0818-17i ("818") and LRF 11-08-1310-09f ("1310"). *See* Grievances (docket nos. 15-4 and 15-5).[2] Defendants point out that grievance no. 818 involved an unrelated issue (i.e., a dispute involving plaintiff's placement of legal materials in a legal footlocker). *See* grievance no. 818. Defendants also point out that grievance no. 1310 is the only grievance relevant to the claims raised in this lawsuit. *See* grievance no. 1310. Plaintiff does not dispute that these are the only two exhausted grievances and that no. 1310 is the operative grievance.

### a. Defendant Daniels

Defendant Daniels contends that grievance no. 1310 is not properly exhausted as to him, because plaintiff failed to name Daniels as the person grieved pursuant to Policy Directive 03.02.130 ¶ R. The court agrees. In this grievance, plaintiff stated that he tried to resolve this grievance on July 30, 2011 by speaking with defendant Daniels, who advised plaintiff that he "was removed form the Buddhist diet for ordering popcorn and vegetable/chili soup off the prisoner store." *See* grievance no. 1310. However, plaintiff directed the grievance against defendant Henry (the Food Director at LRF) rather than defendant Daniels (the Assistant Food Service Director at

---

[2] The court notes that defendants' exhibit page incorrectly identified no. 818 as "LRF-11-05-0717-18i". *See* "Exhibit C" (docket no. 15-4 at p. 1).

6

LRF). *Id.* Plaintiff has failed to properly exhaust a grievance against defendant Daniels. Viewing this evidence in the light most favorable to plaintiff (the non-moving party), there is no evidence that plaintiff properly exhausted a grievance against defendant Daniels. *Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Accordingly, defendant Daniels is entitled to summary judgment.

        **b.**      **Defendant Henry**

The record reflects that plaintiff properly exhausted grievance no. 1310 against defendant Henry. The issue before the court is whether plaintiff exhausted the claims which he has alleged in this lawsuit. Plaintiff's grieved defendant Henry for removing him from the Buddhist diet due to plaintiff's purchase food which was inconsistent with that particular diet, i.e., snack food purchased at the prison store which contained food ingredients which were not allowed under the Buddhist diet:

> I am grieving LRF and Director Mr. Henry for violating my constitutional right to practice my religion of choice by removing me from my Buddhist diet. The [r]eason given was frivolous: "for ordering an artificially flavored butter [po]pcorn and chili/vegetable noodle soups." There is not only nothing mentioned in PD-05.03.150 about what I can or cannot eat, but [t]here is no proof I have ingested them. I regularly buy inexpensive [s]tore goods and donate them to indigent inmates.

Grievance no. 1310 (emphasis in original).

The gist of plaintiff's claim is that defendant Henry removed him from the Buddhist diet because plaintiff purchased items inconsistent with his religious practice, but that this was a frivolous ground because plaintiff did not *ingest* them in violation of Policy Directive 05.03.150 ("Religious Beliefs and Practices of Prisoners"). In the Step I response, the government noted that plaintiff's possession of the food products did in fact violate Policy Directive 05.03.150 ¶ VV (eff. 9/20/07), which provides that:

7

> A prisoner approved to eat from a religious menu shall have that approval rescinded if s/he eats, *or has in his/her possession*, any food item that violates a tenet of his/her designated religion. The approval shall be rescinded only after a hearing is conducted pursuant to Administrative Rule 791.3310 to establish the basis for that removal. A prisoner may reapply to eat from a religious menu no sooner than 60 calendar days after approval is rescinded the first time and no sooner than one year after approval is rescinded a second time. A prisoner may reapply to eat from a religious menu only with approval of the CFA Deputy Director if approval has been rescinded more than twice.

Policy Directive 05.03.150 ¶ VV (emphasis added).

The only issue grieved by plaintiff involved a claim that defendant Henry removed him from the Buddhist diet for purchasing food in violation of Policy Directive 05.03.150 ¶ VV. In this regard, the Step I response stated that prior to filing this grievance, plaintiff had received a Notice of Intent to conduct an administrative hearing regarding a violation of Policy Directive 05.03.150 for purchasing and possessing items that violated the tenets of his religion and that on July 29, 2011 (the day before the date of the incident grieved), plaintiff waived his right to a hearing on the violation and agreed to removal from the "Strict Vegetarian Diet." *See* Grievance no. 1310 (Step I response). Plaintiff's complaint, however, raised an entirely different claim, i.e., that defendant Henry retaliated against plaintiff and denied him a Buddhist diet in violation of the First Amendment and RLUIPA because plaintiff complained about the Buddhist diet at LRF and pointed out errors in the preparation of "Strict Vegan Diet" trays provided to Buddhist prisoners. *See Taylor v. Barns*, 55 Fed.Appx. 746, 747 (6th Cir. 2003) ("Because [the prisoner plaintiff] made no attempt to exhaust the claims raised in his complaint, the complaint was subject to dismissal"). Plaintiff did not properly exhaust a grievance against defendant Henry for the claims alleged in his complaint. *Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Accordingly, defendant Henry is entitled to summary judgment.

## IV. Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (docket no. 14) be **GRANTED** and that this action be **DISMISSED**.

Entered: December 20, 2012            /s/ Hugh W. Brenneman, Jr.
                                      Hugh W. Brenneman, Jr.
                                      United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).